[Cite as *In re C.F.*, 2017-Ohio-375.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.F.
    Z.F.
    K.S.

C.A. No.    28358

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 14-09-567
                DN 14-09-568
                DN 15-04-244

DECISION AND JOURNAL ENTRY

Dated: February 1, 2017

SCHAFER, Judge.

{¶1}    Appellant, Teddi F. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her three minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of three minor children: C.F., born November 21, 2012; Z.F., born April 10, 2011, and K.S., born April 19, 2015. The children's fathers did not appeal from the trial court's judgment.

{¶3}    On September 2, 2014, C.F. and Z.F. were removed from the custody of Mother while she was still pregnant with K.S. because C.F. had sustained multiple injuries and bruises on his head, face, and back that were consistent with abuse. Although Mother initially claimed

that then one-year-old C.F. had been injured by his three-year old brother, a medical expert did not believe her explanation because of the extent of C.F.'s injuries.

{¶4}   Mother eventually admitted that the father of her unborn child ("Father S.") had caused C.F.'s injuries.  Father S., who had a history of mental health problems and violent behavior, including a domestic violence conviction, was later charged and convicted of endangering children and felony domestic violence.  C.F. was later adjudicated abused, Z.F. was adjudicated dependent, and both children were placed in the temporary custody of CSB.  K.S. was removed from Mother's custody shortly after her birth.  She was later adjudicated a dependent child and placed in the temporary custody of CSB.

{¶5}   The primary case plan reunifications goals for Mother remained the same throughout this case because she had demonstrated an inability to appropriately supervise her children and/or to acknowledge that Father S. had seriously injured C.F., that she had failed to protect her child, and that she had repeatedly involved herself with violent men but failed to recognize that those men posed a threat to her and her children.

{¶6}   The initial case plan was adopted by the trial court on November 13, 2014.  In addition to Mother demonstrating an ability to provide for the children's basic needs in a stable home, the case plan required Mother to obtain a mental health assessment and follow all treatment recommendations and to complete parenting classes and demonstrate an ability to implement safe and effective parenting skills through regular visitation with her children. The case plan further provided that Mother's visits would remain supervised until she demonstrated progress on the goals of the case plan.  Although a substance abuse component was later added to the case plan because Mother disclosed a history of marijuana use, drug use by Mother was not a primary focus of the case plan.

{¶7} Mother completed a psychological assessment but failed to follow through with the recommended individual counseling. Although she attended counseling sessions for a few months on an inconsistent basis, she was terminated from the program during October 2015. Mother continued her relationship with Father S., who also failed to comply with the case plan, and both continued to minimize the harm that he caused to C.F. and/or the threat that he posed to all three of Mother's children. Mother also failed to visit her children regularly.

{¶8} CSB eventually moved for permanent custody of all three children. Following a hearing on the motion, the trial court terminated Mother's parental rights and placed Z.F., C.F., and K.S. in the permanent custody of CSB. Mother appeals and raises two assignments of error. This Court will address her assigned errors together because they are interrelated.

II.

### Assignment of Error I

**The trial court committed reversible and plain error when it found that Mother had been convicted of child endangering regarding C.F.**

### Assignment of Error II

**The trial court committed reversible error when it terminated Mother's parental rights as the evidence was not supported by clear and convincing evidence and was against the manifest weight of the evidence.**

{¶9} Mother's first assignment of error is that the trial court erred in finding that she had been convicted of child endangering regarding the abuse of C.F. because no proper evidence was before the court to establish that fact. Consequently, she argues that the trial court erred in basing the first prong of the permanent custody test on that factual finding.

{¶10} To demonstrate reversible error, however, Mother must demonstrate not only that the trial court committed error but also that she suffered prejudice as a result. *See Lowry v. Lowry*, 48 Ohio App.3d 184, 190 (4th Dist.1988), citing *Gries Sports Ents., Inc. v. Cleveland*

*Browns Football Co., Inc.*, 26 Ohio St.3d 15, 28 (1986). The trial court found that CSB had satisfied the first prong of the permanent custody test under R.C. 2151.414(E) for several alternative reasons. As long as one of those grounds was properly supported by clear and convincing evidence, Mother suffered no prejudice from any error in the trial court's alternative finding under R.C. 2151.414(E). *See, e.g., In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 30; *In re R.H.,* 9th Dist. Lorain Nos. 11CA010002, 11CA010003, 2011–Ohio–6749, ¶ 13–14.

**{¶11}** Consequently, this Court will review Mother's second assignment of error to determine whether one of the trial court's alternative grounds for permanent custody was supported by clear and convincing evidence. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶12}** The trial court found that CSB satisfied the first prong of the permanent custody test because, among other reasons, C.F. had been in the temporary custody of CSB for more than 12 of 22 months and Mother does not dispute that finding. As to Z.F. and K.S., the trial court found as one of its alternative reasons that Mother had failed to substantially remedy the

conditions that caused them to remain   placed outside her custody. R.C. 2151.414(E)(1). That finding was fully supported by the record.

{¶13} By the time of the permanent custody hearing, nearly two years after this case began, Mother had no housing or source of income but was relying on various friends and Father S. to provide her with financial support and a place to sleep at night. When she testified at the hearing, Mother admitted that she did not know where she would be sleeping that night. Although Mother completed parenting classes shortly before the hearing, several witnesses testified that Mother did not implement any of the skills that she should have learned in those classes. Mother also failed to visit her children on a regular basis.

{¶14} Moreover, Mother had done little to comply with the mental health component of the case plan. She completed a psychological assessment and disclosed that she had a history of depression and that she had been involved in multiple relationships with violent men. She planned to continue her relationship with Father S., explaining that he had never been violent with her and minimizing the injuries that he caused to C.F.

{¶15} Mother was diagnosed with a personality disorder with antisocial traits. The psychologist who diagnosed her testified that personality disorders are "pervasive and long-standing" and are characterized by a rigid pattern of minimizing problems and/or blaming them on other people. She further explained that the problematic behavioral patterns that are characteristic of the disorder can only be changed or improved through long-term, consistent counseling.

{¶16} As described by the psychologist who evaluated her, Mother's "maladaptive personality traits, very poor insight and judgment, and decision to engage in unhealthy relationships" with more than one violent man "impair her ability to adequately parent at this

time." The psychologist expressed particular concern that Mother chose to continue her unhealthy relationship with Father S., that she minimized the significance of the abuse he perpetrated against C.F., and that she attempted to excuse his abusive behavior by explaining that Father S. was either under the influence of drugs and/or suffering from mental illness. The psychologist recommended that Mother engage in long-term weekly counseling to develop insight into her unhealthy relationships, accountability for her own behavior, and an ability to control her impulses and make better decisions.

{¶17} Although Mother began counseling during June 2015, she did not attend on a consistent basis, did not complete the required homework assignments, and made "minimal progress" in "decreasing her parenting deficits." After a few months of sporadic attendance in counseling, Mother was unsuccessfully terminated from the program.

{¶18} Mother testified at the hearing and continued to minimize the abuse of C.F. by Father S. Moreover, she admitted that she was in the house at the time of the incident, knew that C.F. was with Father S., who was under the influence of drugs, yet she failed to accept any responsibility for the injury to C.F.

{¶19} Although Mother testified that she and Father S. were no longer involved in a relationship, the testimony of several other witnesses contradicted Mother's testimony because they had seen Mother and Father S. together throughout this case and knew that he was paying Mother's bills. Father S., who had a long history of domestic violence and had seriously injured C.F. at the beginning of this case, had done nothing to comply with the substance abuse and mental health components of the case plan. Throughout the two years that this case was pending, Father S. continued to verbally and/or physically threaten the two caseworkers, other CSB staff, the foster father of the two older children, and a relative caregiver of one of the children.

{¶20} Consequently, there was clear and convincing evidence before the trial court to support its conclusion that Mother had failed to substantially remedy the conditions that caused her children to be removed from her custody and remain placed outside her home. R.C. 2151.414(E)(1). Therefore, the trial court properly found that CSB had established the first prong of the permanent custody test and any error in its alternative findings under R.C. 2151.414(E) did not result in prejudice to Mother. *See, e.g., In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, at ¶ 30; *In re R.H.,* 9th Dist. Lorain Nos. 11CA010002, 11CA010003, 2011-Ohio-6749, at ¶ 13-14.

{¶21} Mother also challenges the trial court's finding under the best interest prong of the permanent custody test. When determining the children's best interests under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶22} Mother's interaction with her children throughout this case was limited to supervised visitation. Although Mother initially attended visits on a consistent basis, her rate of attendance declined over time. CSB ultimately reduced the frequency of her scheduled visits because she did not attend regularly. When Mother did come to the visits, she did not bring activities for the older children and did not engage in activities with them, even when prompted to do so. Mother sometimes lost her temper with the children, became physically aggressive, and otherwise behaved inappropriately during visits.

{¶23} The older two children had told the guardian ad litem that they wanted to stay in the foster home where they resided together. Several witnesses testified that Z.F. and C.F. were

doing well in that stable home and that the foster parents were interested in adopting them if parental rights were terminated. The youngest child was too young to express her wishes, so the guardian ad litem spoke on her behalf. She testified that K.S. was also assimilated in her foster home, where she had lived her entire life. The guardian ad litem recommended permanent custody for all three children.

{¶24} The custodial history of Z.F. and C.F. had included nearly two years living outside Mother's custody, in multiple different placements. K.S. had lived her entire life outside Mother's custody. Mother's three children were in need of a legally secure permanent placement and she was unable to provide them with a stable home at the time of the hearing or in the foreseeable future. Because CSB had been unable to find any suitable relatives who were willing to provide the children with a permanent home, the trial court concluded that a legally secure permanent placement would only be achieved by placing them in the permanent custody of CSB. Because Mother has failed to demonstrate that the trial court court's permanent custody decision was not supported by the evidence at the hearing, her first and second assignments of error are overruled.

III.

{¶25} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

GINA NENNIG-HENRY, Attorney at Law, for Appellee.

MICHELE TOMER, Attorney at Law, for Appellee.

MADELINE LEPIDI-CARINO, Guardian ad Litem.