[Cite as *In re T.K.*, 2017-Ohio-9135.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                        )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: T.K.
      D.W.
      C.W.

C.A. No.     28720

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 16-02-132
                DN 16-02-133
                DN 16-02-134

DECISION AND JOURNAL ENTRY

Dated: December 20, 2017

HENSAL, Presiding Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor children and placed the children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of T.K. (d.o.b. 11/17/05), D.W. (d.o.b. 2/9/09), and C.W. (d.o.b. 9/6/10). Father was the biological father of D.W. and C.W. Paternity was never established for T.K. Mother and Father were married, but later divorced. Either as a result of the parents' divorce or a dependency, neglect, abuse case in Stark County involving the children, Father became the legal custodian of all three children. Father remarried and the three children lived with him, Stepmother, and her two children. In November 2015, Father was

incarcerated. As Stepmother had initiated divorce proceedings against Father, she contacted CSB to inform them that she could no longer care for Father's three children. At that time, Mother had not had any contact with the children for over three years. In addition, Mother recently had an infant removed from her custody by Tuscarawas County Children Services ("TCCS"). CSB filed complaints alleging that T.K., D.W., and C.W. were dependent children.

{¶3} Both Mother and Father waived their rights to an adjudicatory hearing, and the children were adjudicated dependent. After the dispositional hearing, the children were placed in the temporary custody of CSB, and the agency's proposed case plan was adopted as the order of the court. The children were maintained in the temporary custody of the agency after each review hearing. Almost a year after the children were removed from Father's custody, CSB filed a motion for permanent custody. As grounds, the agency alleged that the children could not be placed with either parent within a reasonable time or should not be placed with either parent, that the children had been abandoned by Mother, and that an award of permanent custody was in the children's best interest. Approximately three weeks after CSB filed its motion, Father died.

{¶4} On the day of the scheduled permanent custody hearing, Mother failed to appear. Mother's attorney moved for a continuance based on Mother's failure to maintain contact with her, as well as newly discovered information. The juvenile court continued the permanent custody hearing. In the interim, Mother moved for legal custody, or, in the alternative, a six-month extension of temporary custody. On the second scheduled date for the permanent custody hearing, Mother again failed to appear. However, Mother's counsel asserted that she had been in "consistent contact" with Mother and was ready to represent her at the hearing.

**{¶5}** After the conclusion of the permanent custody hearing, the juvenile court granted CSB's motion for permanent custody and terminated Mother's parental rights to T.K., D.W., and C.W. Mother filed a timely appeal in which she raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION GRANTING THE MOTION FOR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶6}** Mother argues that the juvenile court's award of permanent custody was against the manifest weight of the evidence. This Court disagrees.

**{¶7}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶8}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under

Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶9} The juvenile court found that the first prong of the permanent custody test was satisfied because, pursuant to Section 2151.414(B)(1)(a), the children could not be placed with either parent within a reasonable period of time or should not be placed with either parent in consideration of the factors listed in Section 2151.414(E). Immediately prior to the commencement of the permanent custody hearing, CSB informed the juvenile court that it was withdrawing its allegation that Mother had abandoned the children. Nevertheless, the juvenile court premised its first prong finding, in part, on its finding that Mother had abandoned the children pursuant to Section 2151.414(E)(10). The trial court further based its first prong finding on evidence that Mother had demonstrated a lack of commitment toward the children pursuant to Section 2151.414(E)(4). Mother challenges only the juvenile court's finding that she abandoned the children, a ground withdrawn by CSB for consideration.

{¶10} Pursuant to Section 2151.414(B)(1)(a), in determining that children cannot be placed with either parent within a reasonable time or should not be placed with the parents, the juvenile court must consider "all relevant evidence[,]" including the sixteen factors enumerated in Section 2151.414(E). Relying on the plain language of the statute, this Court has held that "the existence of only one of the factors under R.C. 2151.414(E) is sufficient to determine that a

child cannot be placed with a parent within a reasonable time." *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 24. As long as one of the Section 2151.414(E) alternative grounds was properly supported by clear and convincing evidence, a parent will not have suffered any prejudice arising out of any error in the juvenile court's alternative finding under Section 2151.414(E). *In re C.F.*, 9th Dist. Summit No. 28358, 2017-Ohio-375, ¶ 10. Accordingly, the juvenile court's finding pursuant to Section 2151.414(E)(10) that Mother abandoned the children is harmless error, if the trial court's alternative finding is supported by clear and convincing evidence. Mother, however, failed to challenge the juvenile court's alternative finding pursuant to Section 2151.414(E)(4) that she had demonstrated a lack of commitment toward the children. This Court declines to construct an argument on Mother's behalf. *See Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Accordingly, the juvenile court's unchallenged alternative Section 2151.414(E) ground satisfies the first prong finding that the children could not be returned to either parent pursuant to Section 2151.414(B)(1)(a).

{¶11} The juvenile court further found that an award of permanent custody was in the children's best interest. When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider all the relevant factors, including those enumerated in Section 2151.414(D)(1): the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, the children's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

Interactions and interrelationships of the children

{¶12} The first best interest factor requires the juvenile court to consider the "interaction and interrelationship of the child[ren] with the child[ren]'s parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child[ren.]" R.C. 2151.414(D)(1)(a). Mother had not seen the children for over three years when they were removed from Father's home. Although T.K. remembered seeing Mother when she was three years old, the child had no connection to Mother. Neither D.W. nor C.W. had any recollection of Mother. The guardian ad litem reported that, after D.W. and C.W. spoke with Mother on the phone, both children were very confused because Stepmother was the only person they had ever known as their mother.

{¶13} Although CSB scheduled a visitation between Mother and the children shortly after the commencement of the case, Mother failed to appear for that visitation. The agency then learned that there was a 5-year no contact order in effect between Mother and the three children. As soon as the agency learned that the no contact order had been lifted, the caseworker gave Mother the name and phone number of the children's counselor. Because Mother had not had any contact with the young children for so long, CSB and the counselor determined that any visitations must be in a therapeutic environment to allow Mother's reintegration into the children's lives. Despite receiving the children's counselor's contact information twice, Mother never called the counselor to arrange for visitation in a therapeutic setting. During the case, Mother left Ohio for Texas, and then for Alabama. Based on her long absence from the children's lives, the children have no relationship or bond with Mother.

{¶14} The children were all placed together in a therapeutic foster home, not because they require a therapeutic environment, but because that was the only home available to accept

all three siblings. The three children share a close bond with one another. At the time of the permanent custody hearing, they were in the process of transitioning into another foster home, where one of their younger siblings was residing.[1] T.K., D.W., and C.W. had had multiple visits with their prospective foster family and had already begun referring to the foster parents as "mom and dad[.]" The children had developed a bond with the prospective foster family who wished to adopt the three children, as well as their sibling. The children also had developed a relationship with Father's sister, who could not accept custody of the children due to her husband's health issues. Nevertheless, the prospective foster family planned to facilitate an ongoing relationship between the children and their paternal aunt.

Wishes of the children

{¶15} The second best interest factor requires consideration of the "wishes of the child[ren], as expressed directly by the child[ren] or through the child[ren]'s guardian ad litem, with due regard for the maturity of the child[ren.]" R.C. 2151.414(D)(1)(b). The guardian ad litem noted in her written report that all three children wished to live with their paternal aunt. When it was explained to them, however, that their aunt was not able to accept custody of them, the children told the guardian that they wanted to live with the prospective foster family with whom they had developed a bond.

Custodial history of the children

{¶16} The third best interest factor requires consideration of the children's custodial history, including whether they have been in the temporary custody of CSB for 12 or more months of a consecutive 22-month period. R.C. 2151.414(D)(1)(c). Although the children's

---

[1] Mother had previously lost custody of this other child as a result of an active dependency, neglect, abuse case in Tuscarawas County.

precise custodial histories are unclear, they were subject children in a dependency, neglect, abuse case originating in Stark County. Either as a result of that case, or as a result of Mother's and Father's divorce, the children were placed in the legal custody of Father. The children were living with Father and Stepmother (the only mother they ever knew), when CSB removed them from that home. They had not been in Mother's custody for many years and, in fact, had had no contact with Mother for over three years prior to their current involvement with CSB.

{¶17} The children have at all times during this case been placed together in the same foster home. They are in the process of transitioning successfully into a foster-to-adopt home, where their younger sibling also resides. The prospective foster family wishes to adopt T.K., D.W., and C.W., as well as their sibling.

The children's need for a legally secure permanent placement; less restrictive options

{¶18} The fourth best interest factor requires the juvenile court to consider the children's "need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)(d). Mother has been involved with various child welfare agencies for a number of years. T.K., D.W., and C.W. were all subject children in a prior case originating in Stark County. Mother currently has another child in the agency's custody in a case originating in Tuscarawas County. She again became pregnant during the course of these proceedings and moved to Texas around the end of 2016, fearing that an Ohio child welfare agency would take custody of her baby. A few months later, she moved to Alabama, because TCCS had contacted the child welfare agency in Texas where Mother was living. Mother gave birth to her baby in Alabama. An Alabama child welfare agency removed the baby from Mother's custody because she was living in an inappropriate home with a domestic violence offender.

{¶19} Because Mother had an ongoing case in Tuscarawas County, CSB coordinated with TCCS in regard to Mother's case plan objectives. Based on her prior diagnosis of bipolar disorder, Mother was required to engage in mental health services and follow all recommendations. The caseworker described Mother's engagement in services as sporadic. Mother was terminated from mental health services at Northeast Ohio Behavioral Health for failure to appear at two scheduled appointments. She participated in some inpatient services in Tuscarawas County, but she failed to follow up with recommended outpatient services and medication. Mother later began case management services at the Canton Crisis Center, but she failed to appear on the date she was supposed to meet with the caseworker there. Mother further failed to complete the parenting classes recommended as part of her mental health assessment. Although the caseworker believed that Mother was currently engaging in mental health services in Alabama, she had no further information because Mother had only recently signed a release to allow CSB to receive current reports.

{¶20} Mother also suffers from substance abuse issues. She failed to complete a required drug and alcohol assessment. When submitting to drug screens at TCCS, Mother was repeatedly testing positive for cocaine, even while pregnant. When the CSB caseworker tried to follow up with Mother at home, she learned that Mother had moved to Texas. The caseworker learned that Mother had recently been staying at a recovery house for substance abuse in Alabama, but that she had been terminated from that program the day before the permanent custody hearing for unknown reasons.

{¶21} The caseworker testified that she had concerns regarding Mother's stability. Mother never had stable housing in Ohio, and she remained transient during her stays in Texas and Alabama. Mother was not employed, but received disability income. Without stable

housing, with limited income, and based on Mother's noncompliance with her case plan objectives, the caseworker testified that Mother was not able to meet the basic needs of the three children.

{¶22} The children have no relationship with Mother. They rarely mention Mother during counseling and have not asked any questions about her. Although the children have recently developed a relationship with their paternal aunt, she informed the caseworker that she was not able to care for them on a permanent basis. At the time of the hearing, the children were in the process of successfully integrating into a new foster home, in which their younger sibling has also been placed. The foster family wishes to adopt all four siblings to maintain the sibling group in a stable and permanent environment. The foster family also agreed to allow the children to continue to have a relationship with their paternal aunt. Both the caseworker and the guardian ad litem testified that the children would be able to have greater needed stability and permanence in their new foster home.

Applicability of Section 2151.414(E)(7)-(11) factors

{¶23} CSB withdrew its allegation that Mother had abandoned the children pursuant to Section 2151.414(E)(10). No other Section (E)(7)-(11) factor applies.

Conclusion

{¶24} The record demonstrates that this is not a case where the juvenile court clearly lost its way and created a manifest miscarriage of justice in finding that it was in the best interest of the children to be placed in the permanent custody of CSB. *See Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 20. There is an abundance of clear and convincing evidence to demonstrate Mother's long-term lack of commitment to the children and her inability to provide a stable environment. Based on her long-term absence from the children's lives, Mother and the

children share no bond. The two younger children have never even known Mother as a parental figure, while T.K. has only a vague recollection of Mother from when the child was three years old. Mother has ongoing mental health and substance abuse issues, and she engages in treatment only sporadically. She has been transient and unable to maintain housing. Her recent housing situation involved living with a man with a history of domestic violence. Under these circumstances, the children would be exposed to insecurity, instability, and potential harm were they to be returned to Mother's care. Accordingly, the juvenile court did not err by finding that an award of permanent custody was in the best interest of the children.

{¶25} The juvenile court's judgment terminating Mother's parental rights and awarding permanent custody to CSB was not against the manifest weight of the evidence. Mother's assignment of error is overruled.

### III.

{¶26} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

SCHAFER, J.
CARR, J.
CONCUR.

APPEARANCES:

KANDEE R. ROBINSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

MICHELLE TOMER, Guardian ad Litem.