[Cite as *In re M.D.*, 2019-Ohio-1930.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: M.D.
      P.C.

C.A. No.     18CA0085-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE Nos.   2015 12 AB 0048
               2015 12 DE 0049

DECISION AND JOURNAL ENTRY

Dated: May 20, 2019

---

SCHAFER, Judge.

{¶1} Appellant, P.C. ("Father"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his two minor children in the permanent custody of Medina County Job and Family Services ("MCJFS"). This Court affirms.

I.

{¶2} Father is the biological father of M.D., born October 30, 2007; and P.C., born May 16, 2016. The children's mother did not appeal from the trial court's judgment.

{¶3} M.D. and P.C. were removed from the custody of their parents during December 2015 because of prior cases involving the parents and the fact that M.D. came to school with bruises on his body, which were determined to be the result of excessive physical discipline by Father. Father was later convicted of felony domestic violence. At the time of his conviction, Father was on post-release control for a conviction of unlawful sexual contact with a minor.

**{¶4}** Both children were adjudicated dependent and placed in the temporary custody of MCJFS. Because Father had a long history of domestic violence and drug-related convictions, the case plan focused primarily on him demonstrating that he could control his anger and maintain sobriety. Father failed to cooperate with MCJFS, however, and continued to exhibit hostile and intimidating behavior toward caseworkers, the mother of his children, and other service providers. Father did not submit to drug testing as required and admitted that he continued to use alcohol. Father admitted that he continued to drink alcohol because that was his right.

**{¶5}** On November 9, 2017, MCJFS moved for permanent custody of both children. Shortly afterward, Father was arrested, and later convicted, of operating a vehicle while under the influence of alcohol. The final dispositional hearing was continued by agreement of the parties so that MCJFS could conduct a home study of a potential kinship placement for the children. The matter ultimately proceeded to a hearing during July 2018.

**{¶6}** Following a four-day hearing, the trial court terminated parental rights and placed both children in the permanent custody of MCJFS. Father appeals and raises one assignment of error.

II.

**Assignment of Error**

**The trial court erred and abused its discretion by terminating Father's parental rights and granting permanent custody to [MCJFS].**

**{¶7}** Father's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Although he states both an abuse of discretion and manifest weight standard of review, the appropriate standard of review to address the argument that he has raised is whether the judgment is against the manifest weight of

the evidence. *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7. To determine whether the permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations omitted.) *Id*.

{¶8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that MCJFS satisfied the first prong of the permanent custody test because, among other reasons, the children had been in the temporary custody of MCJFS for more than 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). Father does not dispute that finding, which is fully supported by the record.

{¶10} Instead, Father challenges the trial court's finding that permanent custody was in the best interest of both children. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and

interrelationships of the children, their wishes, the custodial history of the children, the need for permanence in their lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶11} Pursuant to the terms of his post-release control stemming from the domestic violence conviction, Father was prohibited from having any contact with M.D., the victim of the crime, and was permitted to have only supervised contact with P.C. Because Father was incarcerated two different times during this case, he had no contact with P.C. during those periods.

{¶12} The children are closely bonded to each other and had lived together in the same foster home for more than two years. Several witnesses testified that the children were close to the foster family and were doing very well in that home. The foster parents had engaged the children in many activities, kept them on a consistent schedule, and worked with their counselors and others to assure that their needs were met. Through ongoing counseling and the structure and stability of the foster home, the mental health and behavior of each child had improved significantly.

{¶13} The paternal grandmother, who had visited the children during this case, testified that the children were doing much better in the foster home and that she believed that they should stay there. She recognized that M.D. had not felt safe living with Father. The children's mother also testified that M.D. was afraid of Father and that she believed the children should stay with the foster family. She admitted that she and Father had not been good parents and that the foster parents were meeting all of her children's needs.

{¶14} Each child had consistently expressed a desire to stay with the foster family. M.D. had said that he feels safe in that home and that his only desire to see Father was for him to apologize for harming him. The guardian ad litem also opined that permanent custody was in the best interest of the children because the parents had made little progress on the goals of the case plan, so reunification was not possible, and the children were thriving in the foster home.

{¶15} For the first four years of M.D.'s life, Father was incarcerated for manufacturing drugs and did not see the child. By the time of the hearing, the custodial history of the children in this case had included more than two years living in the temporary custody of MCJFS. In other words, M.D. had spent more than six years living outside Father's custody, with little or no contact, and P.C. had spent approximately half of his life living in a temporary placement during this case. Both children needed a legally secure permanent placement and MCJFS had found no suitable relatives to provide such a placement. Although Father proposed family friends to take custody, they did not follow through with visitation or any recommended services until after MCJFS moved for permanent custody.

{¶16} During the lengthy period that this case was pending, Father made little effort to work toward reunification and continued to exhibit the same problems that existed when this case began. He had not resolved his anger management problems, nor had he achieved sobriety and, in fact, was convicted of driving under the influence of alcohol while this case was pending. Notably, Father accepted no responsibility for his children being removed from his custody or for his domestic violence conviction. Although he had entered a plea of no contest, he testified that he did not believe that he had abused M.D. because he "got a lot worse [discipline] growing up." He further testified that, under the same circumstances, he would probably hit the child with a belt again because "[t]hat's my right as a parent."

**{¶17}** The evidence before the trial court supported its conclusion that permanent custody was in the best interest of these children. Father's assignment of error is overruled.

III.

**{¶18}** Father's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

AMANDA CASALINUOVO, Attorney at Law, for Appellee.

JEREMY SZUCS, Guardian ad Litem.