**[Cite as *In re T.C.*, 2020-Ohio-4872.]**

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: T.C.
      E.C.

C.A. Nos.      20AP0015
                   20AP0016


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.     2018 JUV-C 000006
                  2018 JUV-C 000007

DECISION AND JOURNAL ENTRY

Dated: October 13, 2020

---

TEODOSIO, Judge.

{¶1} Appellant, A.G. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that placed her minor children in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of three children. Her oldest child is in the legal custody of his father and is not a party to this appeal. This appeal involves Mother's younger children: T.C., born April 15, 2005; and E.C., born August 24, 2007. The children's father ("Father") did not appeal from the trial court's judgment.

{¶3} On December 17, 2017, T.C. and a friend were raped by an armed stranger who forced his way into the home. CSB offered Mother assistance, but Mother did not follow through with medical and mental health treatment for T.C. and refused to cooperate with CSB to develop

a safety plan. CSB also became concerned that Mother was using illegal drugs and failing to meet the basic needs of her children.

{¶4} CSB filed complaints on January 1, 2018, alleging that T.C. was an abused, neglected, and dependent child and that E.C. was a neglected and dependent child. On February 22, 2018, T.C. was adjudicated as an abused, neglected, and dependent child and E.C. was adjudicated dependent. They were both later placed in the temporary custody of CSB.

{¶5} The case plan had several reunification goals for Mother, including obtaining mental health and substance abuse assessments and following any reasonable treatment recommendations; supporting her children's counseling and engaging in family counseling; and obtaining safe and stable housing. During the two next years, however, Mother did little to comply with the case plan.

{¶6} During the first several months of this case, Mother missed most court hearings and meetings with CSB. Mother later began cooperating with the agency on a sporadic basis. Although CSB provided her with a referral to a psychologist, Mother missed five of her scheduled appointments for a mental health assessment. She finally completed the mental health assessment on December 12, 2018.

{¶7} Mother's mental health assessment was performed by a psychologist who had been licensed for 25 years. She diagnosed Mother with adjustment disorder with mixed anxiety and depressed mood and noted that Mother also demonstrated histrionic and avoidant personality traits. The evaluation further noted that Mother had refused to get counseling in the past and tended to use denial and projection of blame on others as her major coping skills. The psychologist recommended that Mother engage in ongoing counseling and medication management to control her anxiety and depression. Mother did not comply with those recommendations.

{¶8} During her mental health assessment, Mother admitted to a long history of illegal drug use, including regular methamphetamine use as recently as a few months earlier, but she denied any current drug use. Mother had never engaged in substance abuse treatment, however, because she did not want to be labeled as a drug user. The psychologist expressed concern that Mother "tended to minimize her drug usage and did not appear to be aware of the impact of her drug use on her children." She ultimately opined that "there is a high probability of [Mother] having a substance dependence disorder." The written evaluation emphasized that "[i]t is vital [Mother] be involved in drug and alcohol assessment and treatment. Her more subtle symptoms are conducive to addictive behaviors and place her at risk for ongoing substance abuse and possible dependence."

{¶9} Mother did not complete a drug and alcohol assessment until July 9, 2019 and did not follow through with the recommendation for ongoing treatment. Mother submitted less than 30 percent of her required drug screens. Moreover, when Mother did submit samples for screening, she always tested positive for illegal drugs, including methamphetamines, amphetamines, and cocaine.

{¶10} On November 25, 2019, CSB moved for permanent custody, alleging that both children had been in its temporary custody for at least 12 months of a consecutive 22-month period and that permanent custody was in their best interest. Following a hearing, the trial court terminated parental rights and placed T.C. and E.C. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY OF
THE CHILDREN TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF
THE EVIDENCE.

{¶11}  Mother asserts that the trial court's permanent custody decision was against the manifest weight of the evidence.  Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).  *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶12}  When determining whether a permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations omitted.)  *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7.  When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact."  *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶13} The trial court found that the first prong of the permanent custody test was satisfied because T.C. and E.C. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). Mother does not challenge that finding, which was supported by the record. The facts are not disputed that, at the time CSB moved for permanent custody, both children had been in its temporary custody for more than 20 months of the prior 22-month period.

{¶14} Next, the trial court found that permanent custody was in the best interest of both children. When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and the need for permanence in their lives.[1] R.C. 2151.414(D)(1)(a) - (d); *In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶15} Mother's interaction with T.C. and E.C. was limited to weekly visits that were always supervised because, other than a few mental health counseling sessions, Mother failed to address her mental health or drug problems during this two-year case. Moreover, because Mother did not attend visits on a consistent basis, CSB removed her from the visitation schedule numerous times during that two-year period. When Mother was on the visitation schedule, she attended approximately half of the visits that were scheduled for her.

{¶16} The children were initially placed together but were later placed in separate foster homes because of their mental health needs and tendency to compete with each other in destructive ways, such as self-harming behaviors. In their separate foster homes, T.C. and E.C. were engaged

---

[1] Although R.C. 2151.414(D)(1)(e) also requires the court to consider whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case, none of those factors are relevant here.

in ongoing counseling and their behavior and school performance had improved. CSB presented evidence that both children would require ongoing counseling and a stable environment.

{¶17} The children's current foster families had been ensuring that they visit each other on a regular basis and planned to continue doing so. Although the foster families had not expressed a desire to adopt either child, they were committed to providing each child with a stable home on a long-term basis until the children can be adopted.

{¶18} The children's wishes were expressed through their court-appointed counsel. The children were ages 15 and almost 13 years old by the end of the hearing. They had each "discussed their positions with [counsel] in depth" and told her that they did not wish to have any further contact with Mother or Father and wanted CSB's motion for permanent custody to be granted. Each child believed that Mother was continuing to abuse drugs, despite her attempts to conceal the problem from them, and they did not think that Mother was likely to control her drug addiction.

{¶19} The guardian ad litem also opined that permanent custody was in the best interest of both children. She also emphasized Mother's ongoing drug use and noted her disappointment that Mother had two years to work on the case plan but made little effort to address her substance abuse problem.

{¶20} The custodial history of T.C. and E.C. has included two years of living in CSB's temporary custody and moving between temporary placements. Both children suffered from mental health and behavioral problems and needed a legally secure permanent placement. Mother was not prepared to provide them with a stable placement and CSB had been unable to find a suitable relative or kinship provider who was willing and able to do so. The trial court could not extend temporary custody beyond the two-year mark and these children did not qualify for a PPLA placement. *See* R.C. 2151.353(G) and (A)(5). Although the current foster parents did not express

a desire to adopt these children, they assured the court that they were willing to provide them with stable homes until an adoptive placement or placements could be found. The trial court reasonably concluded that permanent custody would achieve a legally secure permanent placement for these children.

{¶21} Mother has failed to demonstrate that the trial court's permanent custody decision was against the manifest weight of the evidence. Mother's assignment of error is overruled.

III.

{¶22} Mother's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

DANIEL R., LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.

MICHELLE BARNES, Guardian ad Litem.