[Cite as *In re N.K.*, 2019-Ohio-371.]

STATE OF OHIO        )            IN THE COURT OF APPEALS
                         )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: N.K.                       C.A. No.     29074
      C.K.
      M.K.
      N.K.
      C.K.                    APPEAL FROM JUDGMENT
      D.K.                    ENTERED IN THE
      N.K.                    COURT OF COMMON PLEAS
                               COUNTY OF SUMMIT, OHIO
                               CASE Nos.    DN 17-04-000222
                                             DN 17-04-000223
                                           DN 17-04-000224
                                           DN 17-04-000225
                                           DN 17-04-000226
                                           DN 17-04-000227
                                           DN 17-04-000228

DECISION AND JOURNAL ENTRY

Dated: February 6, 2019

SCHAFER, Judge.

**{¶1}** Appellant, Tina B. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her seven minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of N.K., born March 23, 2007; C.K., born April 23, 2008; M.K., born April 21, 2010; N.K., April 20, 2011; C.K., born September 19, 2013; D.K., born October 7, 2014; and N.K., born November 29, 2016. The father of these seven children ("Father K.") did not appeal from the trial court's judgment.

{¶3} CSB has a lengthy history with this family, dating back to March 2001, with Mother's oldest two children, C.H. and B.H., who are now adults and are not parties to this appeal. At the time C.H. and B.H. were removed from Mother's home, they were only one and two years old. C.H. had numerous bruises and other injuries on his body and B.H. was suffering from untreated pneumonia. Mother later agreed that she had not been meeting the children's basic needs, including providing them with appropriate medical treatment for their injuries and illnesses.

{¶4} During that case, C.H. was adjudicated abused and dependent and B.H. was adjudicated neglected. Among other things, the case plan required that Mother engage in ongoing treatment to address her mental health problems and to demonstrate that she could provide for the basic needs of her children. The trial court later found that Mother complied with the requirements of the case plan. On October 15, 2001, C.H. and B.H. were returned to Mother's custody under an order of protective supervision. The trial court terminated protective supervision and closed that case on April 9, 2002.

{¶5} CSB filed complaints in a second case on November 12, 2008. That case again involved C.H. and B.H. as well as the two oldest children at issue in this appeal. The complaint in that case alleged that Father K. had been physically abusing C.H., who is not his child. C.H. was adjudicated abused, neglected, and dependent. The other children, including B.H., were adjudicated dependent. The case plan required Father K. to vacate the premises and have no contact with the children. The children were initially allowed to remain with Mother, under an order of protective supervision, but were removed from her custody shortly afterward and placed in the temporary custody of CSB.

{¶6}    During the 2008 case, the reunification goals focused on obtaining mental health treatment for the children and Mother.  Mother disclosed that she had also been a victim of abuse as a child and that she had a long history of mental health problems.  Mother began mental health counseling and treatment with psychiatric medication.  The children were eventually returned to her custody and the case was closed during March 2011.

{¶7}    Mother gave birth to another child during the second case and, before the current case began on April 5, 2017, she gave birth to four more children.  The complaints in this case alleged that B.H., then still a minor, and these seven children were abused and/or dependent children because Mother's now-adult son, C.H., had sexually abused several of them.  In addition to Mother's long history with CSB, the complaints further alleged that Mother had been abusing drugs and had been aware of the sexual abuse allegations but had done nothing to protect her minor children.  The agency also alleged that the children had been left to fend for themselves to meet even their basic needs.

{¶8}    Mother later agreed to adjudications of dependency of B.H. and these seven children and that the children should be placed in the temporary custody of CSB.  This was the third time that B.H. was adjudicated a neglected and/or dependent child.  *See* R.C. 2151.414(B)(1)(e).   The case plan in this case again focused on Mother's mental health, poor decision making, and her more recent problem with drug abuse.

{¶9}    Although there were numerous goals on the case plan for Mother, the most significant goal was for Mother to stabilize her mental health.  Mother had been diagnosed with bipolar disorder at the age of eleven, has been hospitalized for psychiatric treatment repeatedly, and her primary source of income is disability benefits that she receives because of her serious mental health problems.

{¶10} Mother had stopped taking psychiatric medication shortly before this case began and was exhibiting symptoms of mania when she received her psychological evaluation in this case. During this case, Mother was diagnosed with additional, serious mental health disorders, but she refused to admit that she had any mental health problems or to engage in ongoing treatment. CSB was also concerned that Mother continued to make poor choices by involving herself in violent relationships and, more recently, had started abusing drugs. Mother refused to work on the treatment goals of the case plan and did not visit her children on a regular basis.

{¶11} On January 24, 2018, CSB moved for permanent custody of these seven children. Following a hearing, the trial court terminated parental rights and placed the children in the permanent custody of CSB. Mother appeals and raises three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT'S DECISION TO TERMINATE PARENTAL RIGHTS WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶12} Mother's first assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the

agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

**{¶13}** The trial court found that CSB satisfied the first prong of the permanent custody test for several alternative reasons, including that B.H., another child who had been in Mother's custody, had been adjudicated neglected or dependent on three separate occasions. *See* R.C. 2151.414(B)(1)(e). Mother does not dispute that the evidence supported this first-prong finding.

**{¶14}** Instead, Mother argues that permanent custody was not in the best interest of the children but that, instead, the court should have granted a six-month extension of temporary custody. The trial court had authority to extend temporary custody only if it also found that Mother had made "significant progress" on the goals of the case plan and that there was reasonable cause to believe that the children would be reunified with her or otherwise permanently placed during the extension period. *In re J.G.*, 9th Dist. Summit No. 29106, 2018-Ohio-5222, ¶ 8, quoting R.C. 2151.415(D)(1).

**{¶15}** The record in this case reveals that Mother had failed to make even minimal progress on the reunification goals of the case plan. Instead, she continued to abuse drugs, was convicted for drug-related crimes, and did not follow through with counseling and medication for her multiple, serious mental health diagnoses. Mother also failed to visit her children on a regular basis, even when she was not incarcerated.

**{¶16}** "Moreover, the trial court was required to conduct a best interest analysis to determine whether to place the children in the permanent custody of CSB or to extend temporary custody." *In re J.G.* at ¶ 9. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, and

the need for permanence in their lives. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶17} Mother's visits with the children were always closely monitored because she failed to comply with the requirements of the case plan and CSB remained concerned about her behavior around the children. Mother frequently behaved inappropriately around the children, including insulting them, defying the directions of the visitation supervisors, and discussing graphic and inappropriate details about her life. Mother's drug use continued, her attendance at visits became more sporadic, and she was ultimately convicted of aggravated possession of drugs. Mother was initially placed on probation but, according to her probation officer, Mother had not been complying with the conditions of her probation. Mother stopped visiting the children approximately one month before the hearing.

{¶18} Although the oldest three children had expressed their desire to return to Mother's custody, CSB presented evidence that these children suffered from serious emotional problems. The older children had suffered serious trauma through the sexual abuse by C.H. and also suffered from unrelated mental illness and/or cognitive delays. One of the children also suffered horrible guilt about the family's situation because he had reported the abuse by C.H. Therapists testified that the children were just beginning to learn how to deal with their emotions and communicate their feelings. The younger children were too young to express their wishes. The guardian ad litem believed that permanent custody was in the best interest of all the children because their basic and emotional needs were being met in a stable environment away from their parents.

{¶19} During this case, the children lived outside Mother's custody for less than a year but they had finally achieved some stability in their lives. While they had lived with Mother,

their basic and special needs had been neglected and many of them had been the victims of repeated sexual abuse in their own home. All of these children were in need of a legally secure permanent placement and CSB had been unable to locate any suitable relatives who were willing and able to provide a permanent home for any of them. The trial court reasonably concluded permanent custody was in their best interests. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED BY NOT GRANTING APPELLANT MOTHER'S MOTION FOR LEGAL CUSTODY WHERE CSB FAILED TO USE REASONABLE REUNIFICATION EFFORTS TO REUNITE APPELLANT MOTHER AND HER MINOR CHILD[REN.]

{¶20} Mother's second assignment of error is that CSB failed to exert reasonable efforts to reunify Mother with her children because it did not arrange for Mother to attend parenting education classes, but instead focused on her first addressing her mental health problems. Although Mother asserts throughout her brief that she was making significant progress on the goals of the case plan, as explained already, she was not.

{¶21} Of greatest concern to CSB were Mother's untreated mental health problems and resulting drug usage and history of making poor choices for herself and her family. Before Mother could benefit from parenting classes and many other case plan services, it was fundamental that she stabilize her mental health. Nevertheless, Mother refused to even admit that she had mental health or substance abuse problems or to engage in any treatment. The undisputed evidence before the trial court demonstrated that Mother's inability to be reunited with her children was the result of her own refusal to comply with the requirements of the case plan, not because of a lack of reunification efforts by CSB. Mother's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ADMITTED RECORDS WITHOUT MANDATORY NOTICE TO ALL PARTIES.

{¶22} Mother's final assignment of error is that the trial court erred in admitting certain exhibits into evidence because CSB had failed to provide defense counsel with the written notice that it would be subpoenaing those records from certain mental health agencies. Trial counsel raised this objection at the hearing and, after a lengthy discussion on the record, the trial court allowed the exhibits to be admitted.

{¶23} To establish reversible error, Mother must demonstrate an error in the trial court proceedings that resulted in prejudice to her defense. *See*, *e.g*., *In re P.T*., 9th Dist. Summit No. 24207, 2008-Ohio-4690, ¶ 17. Even if Mother could establish that she was deprived of proper notice that CSB intended to introduce these exhibits, she must establish that the lack of notice hampered her counsel's ability to prepare a defense. Although Mother's counsel raised a timely objection to the introduction of this evidence, counsel did not request a continuance of the hearing or a recess to enable defense counsel to review the exhibits to prepare to defend against them. *See In re R.R*., 9th Dist. Summit No. 27572, 2015-Ohio-5245, ¶ 21 (emphasizing that a continuance could have avoided any prejudice caused by a lack of notice about evidence to be considered by the trial court.).

{¶24} Mother's only argument on appeal is that some of the information in the records predated this case. The agency is not precluded from admitting evidence from prior cases involving the same parent. In fact, CSB had moved for permanent custody on several alternative grounds, including that this case involved the third adjudication of B.H. as a neglected and/or dependent child. To establish that ground, the agency necessarily needed to present clear and

convincing evidence that B.H. had been adjudicated in two prior cases and the reasons for those adjudications. Mother's third assignment of error is overruled.

III.

**{¶25}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

RHONDA L. KOTNIK, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.