[Cite as *In re F.B.*, 2019-Ohio-1738.]

STATE OF OHIO       )              IN THE COURT OF APPEALS
                      )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: F.B.                         C.A. Nos.     28960
       G.G.                                  28985
       T.G.
       J.G.

                                 APPEAL FROM JUDGMENT
                                 ENTERED IN THE
                                 COURT OF COMMON PLEAS
                                 COUNTY OF SUMMIT, OHIO
                                 CASE Nos.    DN 14-02-86
                                             DN 14-02-87
                                             DN 14-02-88
                                             DN 14-02-89
                                             DN 14-02-90

## DECISION AND JOURNAL ENTRY

Dated: May 8, 2019

SCHAFER, Judge.

**{¶1}** Appellants, A.G. ("Mother") and S.G. ("Father") appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor children after a reversal and remand by this Court. This Court had reversed and remanded the case for the trial court to determine whether Mother's trial counsel had a conflict of interest that may have necessitated a new permanent custody hearing in this case. The trial court determined that there had been no conflict of interest and reinstated the prior permanent custody judgment. This Court affirms.

I.

**{¶2}** Father is the biological father of the four of the minor children at issue in this appeal: F.B., born August 2, 2005; J.G., born February 29, 2008; G.G., born April 7, 2009; and

T.G., born October 16, 2010. Mother is the biological mother of G.G. and T.G. and is the biological mother of the fifth child at issue in this appeal: C.L., born May 18, 2002. Although the mother of F.B. and J.G. participated in the prior appeal, she did not appeal from the trial court's judgment on remand.

{¶3} This case has a long and complicated history, which has included several prior appeals. The five children at issue in this appeal are a blended family with more than one mother and father. Most of the mothers and fathers have had prior involvement with CSB, with some of these children and other siblings who are not at issue in this case.

{¶4} Summit County Children Services Board ("CSB") first became involved in this case during 2014, based on allegations that the children's basic needs were not being met and that C.L. and another child, who is not a party to this appeal, had been subjected to ongoing neglect and abuse by Mother. At that time, Father was living outside the home because Mother had obtained a domestic violence protection order against him. The children were removed from the home, later adjudicated dependent, and placed in the temporary custody of CSB. Father appealed the initial adjudication and disposition of his children, which was affirmed by this Court. *In re F.B.*, 9th Dist. Summit No. 27762, 2016-Ohio-3434.

{¶5} The case plan required both parents to address their mental health and substance abuse problems, abstain from domestic violence and other criminal activity, maintain stable income and housing, and demonstrate that they could provide for the children's basic needs. Father did not comply with the requirements of the case plan.

{¶6} Because Mother initially made progress on the reunification goals of the case plan, one of her children and later the other two were returned to her temporary custody under protective supervision by CSB. Within one to two months of each child's return to Mother's

home, however, they were again removed and placed in the temporary custody of CSB because domestic violence continued between Father and Mother, Mother moved out of county, was living with a sex offender, and had been arrested in West Virginia for driving while intoxicated. Shortly afterward, CSB moved for permanent custody of the children. Mother and Father alternatively moved for legal custody of some of the children.

{¶7} The case proceeded to a final dispositional hearing before a visiting judge. The dispositive issue in the prior appeal involved a potential conflict of interest by Mother's trial counsel. Specifically, toward the end of the hearing, Mother's trial counsel informed the trial court that she could not represent Mother on appeal because she had accepted a position in the legal department at CSB and would soon begin her new position. The trial court did not inquire about any potential conflict of interest created by counsel accepting employment with the opposing party. Mother was not questioned about the potential conflict of interest on the record, nor did she waive any potential conflict in writing or otherwise on the record. Mother's trial counsel continued to represent her throughout the hearing.

{¶8} The trial court ultimately terminated parental rights and placed the five children in the permanent custody of CSB. Among other grounds, it found that the parents had failed to substantially remedy the conditions that caused the children to remain placed outside the home and that permanent custody was in their best interest. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1); R.C. 2151.414(D). Three of the children's parents appealed the trial court's original permanent custody judgment.

{¶9} In the first permanent custody appeal, CSB conceded that the trial court committed reversible error by failing to inquire about whether Mother's counsel had a conflict of interest because of her upcoming employment with CSB and whether Mother had waived any

potential conflict of interest. Prof.Cond.R. 1.7(a). Because the conflict issue could potentially necessitate a new permanent custody hearing, this Court did not address the parents' remaining assignments of error, but reversed and remanded the entire case for the trial court to inquire of trial counsel and Mother about the potential conflict of interest. *In re G.G.*, 9th Dist. Summit. Nos. 28574, 28587, and 28594, 2017-Ohio-7850, ¶ 3.

{¶10} On remand, the parties were given the opportunity to brief the issue prior to the hearing. The sole focus of the pre-hearing briefing was on whether Mother's former trial counsel had a conflict of interest under Prof.Cond.R. 1.7(a)(1), because she may have concurrently or simultaneously represented Mother and CSB. The trial court held a hearing with the parties and their current counsel. The trial court ultimately determined that there was no conflict of interest because Mother's trial counsel did not have a conflict of interest under Prof.Cod.R. 1.7(a)(1). Consequently, the trial court again placed the children in the permanent custody of CSB.

{¶11} Mother and Father separately appealed and their appeals were later consolidated. Mother raises three assignments of error and Father raises eight. For ease of discussion, we will address each parent's assigned errors in turn.

II.

**<u>Mother's Assignment of Error I</u>**

**The trial court's order granting permanent custody is not a final, appealable order.**

{¶12} We will address this assignment of error first because it challenges this Court's jurisdiction to hear this appeal. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 88 (1989). Pursuant to

R.C. 2505.02(B)(1), which is at issue in this appeal, "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is *** [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]"

{¶13} The order appealed in this case is the trial court's judgment of February 13, 2018, that placed all five children in the permanent custody of CSB. Despite Mother's argument to the contrary, in addition to granting CSB's motion to reinstate the prior permanent custody judgment, the trial court explicitly ordered that each child be "placed in the permanent custody of [CSB.]" The order further explained that it was entered in accordance with two prior orders of the court: (1) the trial court's January 2018 order on remand, finding that there was no conflict of interest on the part of Mother's former counsel; and (2) the prior permanent custody judgment, filed on March 6, 2017.

{¶14} Mother also argues that the February 2018 order is not final and appealable because it requires the parties to refer to other orders issued by the juvenile court in this case. Mother points to no legal authority that requires a juvenile court judgment to be issued in a single order that sets forth all the reasons for its decision. In fact, this Court rejected a similar argument raised by Father in his appeal from the initial adjudication and disposition of his children in this case. *In re F.B.*, 9th Dist. Summit No. 27762, 2016-Ohio-3434, ¶ 9-10. Because Mother has failed to demonstrate that the order appealed in this case is not final and appealable, this Court concludes that it has jurisdiction to consider the merits of this appeal. Mother's first assignment of error is overruled.

**Mother's Assignment of Error II**

**Mother's counsel violated the Ohio Rules of Professional Conduct and Mother's rights to due process by taking a position with [CSB] in the middle of the permanent custody hearing.**

{¶15} Through her first assignment or error, Mother challenges the trial court's decision on remand that her former trial counsel did not have a conflict of interest under Prof.Cond.R. 1.7(a). During the permanent custody hearing in this case, Mother's counsel informed the trial court that she had just accepted a position in CSB's legal department and that she would be starting the position in one week. Trial counsel met with the trial judge in chambers without the parties present. Mother's counsel wanted to put on the record that she had accepted a job at CSB and that she would not be able to continue representing Mother after the hearing. The trial court did not delve into whether Mother's trial counsel had a potential conflict of interest, given that she had accepted a position with the opposing party, nor did it question Mother about whether she had waived any potential conflict. Mother's counsel continued to represent Mother throughout the remainder of the hearing. After the hearing, Mother's counsel submitted a motion to withdraw, which was granted one week later.

{¶16} During the first appeal, all parties, including CSB, agreed that the trial court committed reversible error by failing to inquire into whether Mother's trial counsel had a conflict of interest and, if so, question Mother about whether she had agreed to waive any potential conflict. CSB conceded in its brief that, "where the trial court knows or reasonably should know of a potential conflict of interest, the court has an affirmative duty to inquire whether a conflict actually exists." CSB's Brief, citing *State v. Gillard*, 64 Ohio St.3d. 304, 309 (1992). The agency further conceded that, because the trial court had conducted no inquiry, the case should be reversed and remanded to the trial court for a hearing. Because CSB had conceded error, this

Court's discussion of the issue in the prior appeal was brief. Without citing a specific subsection of Prof.Cond.R. 1.7(a), this Court explained that "[t]he conflict of interest issue relates to one attorney's application for and acceptance of imminent employment in CSB's legal counsel department during her representation of one of the parents." *In re G.G.*, 2017-Ohio-7850, ¶ 3.

{¶17} At issue was Prof.Cond.R. 1.7(a), which provides:

A lawyer's * * * continuation of representation of a client creates a conflict of interest if either of the following applies:

(1) the representation of that client will be directly adverse to another current client;

(2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to * * * a third person or by the lawyer's own personal interests.

{¶18} Although not directly stated in this Court's opinion in the prior appeal, there could have been a potential conflict of interest either because Mother's trial counsel may have simultaneously represented Mother and CSB, or because counsel had accepted employment with the opposing party, which may have created a "*substantial* risk that [her] ability to consider, recommend, or carry out an appropriate course of action for [Mother] will be materially limited by the lawyer's responsibilities to * * * a third person or by the lawyer's own personal interests." Prof.Cond.R. 1.7(a)(2). Moreover, if a conflict of interest did exist, continued representation of Mother was permitted only if, among other things, Mother gave informed consent, confirmed in writing, to the lawyer continuing to represent her. Prof.Cond.R. 1.7(b).

{¶19} This Court's direction on remand, however, did not specify a subsection of Prof.Cond.R. 1.7(a) but stated:

Although it appears to this Court on the surface that counsel may be representing adverse clients, and an inherent conflict of interest may exist pursuant to Prof.Cond.R. 1.7, this Court cannot make that determination in the first instance on the limited record here. Consequently, this matter is remanded to the juvenile

court for a hearing including all parties to determine the following: (1) if a conflict of interest was created by counsel's acceptance of employment with CSB during the course of the permanent custody hearing; (2) if so, whether such a conflict of interest could be waived under the law; and (3) the impact of this type of conflict of interest on (a) each of the parents, (b) the agency, and (c) the children. The juvenile court failed to inquire regarding these issues when the conflict was disclosed below, and further declined to include the parents in the limited discussion it had with the attorneys.

*In re G.G.* at ¶ 4.

**{¶20}** On remand, Mother was appointed new counsel to represent her. Prior to a hearing, the parties were given the opportunity to submit written briefs on the potential conflict of interest and its effect on the permanent custody hearing. The sole issue briefed by the parties prior to the hearing was whether trial counsel had a potential conflict of interest under Prof.Cond.R. 1.7(a)(1) because counsel may have simultaneously or concurrently represented Mother and CSB. The brief submitted by CSB included attached affidavits and filings in the case about the relevant facts asserted in its brief. No party, all of whom were represented by counsel, raised an argument under Prof.Cond.R. 1.7(a)(2) about whether former counsel's imminent employment with CSB created a substantial risk that her representation of Mother might have been adversely affected by her relationship with her soon-to-be employer or by her own personal interests.

**{¶21}** The matter proceeded to a hearing, attended by all parties and their counsel at that time. Although counsel for CSB was the first to speak to the trial court, trial counsel for each parent was then given the opportunity to state their respective position. Each argued about whether there had been a conflict of interest by Mother's former counsel under Prof.Cond.R. 1.7(a)(1), not 1.7(a)(2).

**{¶22}** None of the attorneys asked to present additional evidence or to call any witnesses because, as to whether Mother's former counsel had concurrently represented Mother and CSB,

the relevant facts were not disputed. The permanent custody hearing concluded on Friday, February 24, 2017. On March 1, Mother's former counsel moved the trial court to withdraw as counsel for Mother, but the trial court did not grant her leave to withdraw until March 7, one day after the permanent custody decision was filed. Counsel began her position at CSB on March 6, and she began completing paperwork for the job on March 2.

**{¶23}** Although the parties argued in the trial court and again on appeal solely about whether there was any overlap in counsel's representation of Mother and CSB, there really was no factual dispute that there was a one-day overlap in counsel's representation of Mother and CSB. Counsel remained Mother's counsel of record in this case for one day after she began working for CSB.

**{¶24}** Although there was a one-day overlap in counsel's representation of Mother and CSB, Prof.Cond.R. 1.7(a)(1) provides that a conflict of interest existed only if counsel's representation of CSB was "directly adverse to another current client[.]" Notably, none of the parents attempted to present any argument or evidence that Mother had been adversely affected by her trial counsel beginning a position at CSB after the permanent custody hearing had concluded and only one day into the running of time to file an appeal or any post-judgment motions. There was not even a suggestion at the hearing that counsel did or should have done anything to represent Mother's interests during that one-day overlap of representation. She was merely Mother's counsel of record in this case.

**{¶25}** The trial court concluded that there was no conflict of interest under Prof.Cond.R. 1.7(a)(1) because Mother's former trial counsel had not concurrently represented Mother and CSB in a manner that had an adverse impact on either client. Having found no conflict of interest, there was no need for the trial court to answer the remaining questions set forth by this

Court in its mandate on remand. Consequently, the trial court again placed the children in the permanent custody of CSB.

{¶26} In this appeal, Mother again argues about whether Mother's former counsel had a conflict of interest under Prof.Cond.R. 1.7(a)(1) because of that one-day overlap of representation. Again, however, she fails to argue or demonstrate that there was an adverse impact on her during that time. Absent some suggestion of an adverse impact on Mother during that brief overlap, we cannot conclude that the trial court erred in finding that there was no conflict of interest under Prof.Cond.R. 1.7(a)(1).

{¶27} Alternatively, Mother's appellate counsel argues that there was conflict of interest under Prof.Cond.R. 1.7(a)(2) because counsel's relationship with her soon-to-be employer and/or her own personal interests may have negatively affected her legal representation of Mother. Mother was represented by counsel during the proceedings on remand, as were the other parents, and none of them raised this legal argument during the trial court proceedings. Moreover, none of the parties attempted to get evidence on the record that would be necessary to address such an argument. The parties were provided due process through the proceedings on remand. This Court will not fault the trial court for failing to address a legal argument that was not raised or for failing to consider evidence that was not presented. Mother's second assignment of error is overruled.

### Mother's Assignment of Error III

**The trial court committed reversible and plain error when it terminated Mother's parental rights as the [judgment] was not supported by clear and convincing evidence and was against the manifest weight of the evidence.**

{¶28} Mother's final assignment of error is that the trial court's judgment was against the manifest weight of the evidence. Mother does not actually argue that the trial court's

decision was not supported by the evidence presented at the hearing, however. Instead, she argues that the trial court's judgment on remand is legally deficient because the court stated no findings about the basis for granting permanent custody of these children. As this Court explained in its discussion of Mother's first assignment of error, the trial court's permanent custody judgment on remand explicitly stated that it was entered on the same basis as the March 2017 permanent custody judgment. The prior judgment explicitly found that, among other grounds, the parents had failed to substantially remedy the conditions that caused the children to remain placed outside the home and that permanent custody was in their best interest. *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(1); R.C. 2151.414(D).

{¶29} To the extent that Mother raises additional arguments that do not fall within the scope of her stated assignment of error and have not separately been assigned as error, they will not be addressed. *See* App.R. 16(A)(7); *State v. Bennett*, 9th Dist. Lorain No. 14CA010579, 2015-Ohio-2887, ¶ 13. Mother's third assignment of error is overruled.

### Father's Assignment of Error I

**The trial court committed reversible and plain error when it prohibited Father from fully participating in all portions of the case by ignoring his objections and stating that he did not have standing thus impeding his due process rights.**

{¶30} Father's first assignment of error is that the trial court committed reversible error by preventing him from raising objections to evidence that pertained to the mothers of his children. Father asserts that, because his rights were aligned with the children's mothers, he should have been permitted to raise objections on their behalf. Father concedes, however, that whenever he raised an objection on behalf of the mothers, the trial court asked the mothers' counsel if they joined in the objection. To demonstrate reversible error, Father must demonstrate

not only trial court error but also that the error resulted in prejudice to his defense. *See*, *e.g.*, *In re P.T.*, 9th Dist. Summit No. 24207, 2008-Ohio-4690, ¶ 17.

{¶31} Father fails to point to any evidence that was admitted to his prejudice because he or other defense counsel was not permitted to raise an objection. Father's first assignment of error is overruled.

### Father's Assignment of Error II

**The trial court committed reversible and plain error when it allowed testimony regarding Father's parenting evaluation which a magistrate had found to be biased and had stated would not be held for him to complete.**

{¶32} Father's second assignment of error is that the trial court erred in allowing testimony about his parenting evaluation because: (1) the court had already determined that the evaluator was biased and (2) he should not have been held to the requirements of that evaluation. Father's argument is based on faulty premises. This Court will address each in turn.

{¶33} To begin with, the trial court did not find that the parenting evaluation was biased or that it should not be considered at the permanent custody phase of the case. During late 2014, Father had objected to the parenting evaluation because the evaluator had relied on outside information that had been provided by CSB, including facts about multiple acts of violence allegedly committed by Father. At that time, the trial court noted that Father had not been given the opportunity to dispute the claims of violence and, for that reason, stated that it would place little weight on the evaluation. Nevertheless, the trial court did not strike the evaluation or explicitly find it to be biased, and it repeatedly denied Father's request for a new parenting evaluation.

{¶34} At the permanent custody hearing held more than two years later, Father had the opportunity to cross-examine the evaluator about the outside information provided by CSB. The

evaluator explained that she would have reached the same conclusions even without the outside information from CSB, and that Father himself had admitted to committing numerous acts of violence against family members. CSB also presented several certified convictions to demonstrate that Father had more than a ten-year history of multiple convictions of assault, endangering children, domestic violence, and violating civil protection orders.

{¶35} Next, Father claims that he suffered prejudice from the parenting evaluation because he had no notice that he was expected to comply with the counseling recommendation from what he believes was a flawed evaluation. Even if this Court accepted Father's argument that he received no valid parenting evaluation, that was not the only part of the case plan that required Father to engage in counseling and anger management programs.

{¶36} From the beginning of this case, CSB was aware that Father had a lengthy history in criminal and juvenile courts cases because he lacked the ability to control his anger and had committed numerous acts of violence against the women and children in his life. As originally adopted, the case plan explicitly required Father to engage in counseling, anger management, and drug treatment and to demonstrate that he could manage his anger and control the symptoms of his pre-diagnosed antisocial personality disorder.

{¶37} Although Father completed a parenting evaluation, which became the subject of this controversy, the stated purpose of that evaluation on the case plan was "to determine what additional services would benefit" each parent. Father failed to consistently engage in case plan services, violated orders of the criminal court and juvenile court prohibiting him from having contact with Mother or the children, continued to demonstrate violent behavior, and was again criminally convicted for an act of domestic violence against Mother.

{¶38} Even if the trial court would have stricken all evidence about the parenting evaluation, the record was replete with evidence that Father failed to comply with the other requirements of the case plan and continued to exhibit the same parenting problems that he had demonstrated for many years. Father's second assignment of error is overruled.

### Father's Assignment of Error III

**The trial court committed reversible and plain error when it allowed expert testimony over Father's objection.**

{¶39} Father's third assignment of error challenges the manner in which the witness who conducted his parenting evaluation was qualified to testify as an expert. The witness explained that she has been a licensed psychologist for more than 15 years and that she had conducted over 3,000 parenting evaluations during her career. Again, Father's argument that the trial court had already found the witness to be biased is not supported by the record.

{¶40} In other words, Father points to nothing in the record to demonstrate that the witness was not, in fact, qualified to testify as an expert in her field under Evid.R. 702. He merely challenges the way that opposing counsel questioned her about her qualifications as an expert, asserting that counsel failed to comply with the requirements of Loc.R. 7.02(B)(4) of the Court of Common Pleas of Summit County, Juvenile Division. In fact, the trial court offered Father's counsel the opportunity to question the witness about her qualifications as an expert, but she declined to do so. Because Father has failed to demonstrate any prejudice resulting from this alleged error, his third assignment of error is overruled.

### Father's Assignment of Error IV

**The trial court committed reversible and plain error when it allowed testimony [about] exhibits that had been obtained by court order without a motion or providing the parties a chance to object to said exhibits being obtained.**

### Father's Assignment of Error V

**The trial court committed reversible and plain error when it admitted exhibits over Father's objection that Father had not had a chance to review.**

{¶41} Father's fourth and fifth assignments of error are that the trial court committed reversible error when it allowed CSB to present certain exhibits into evidence because CSB had failed to provide defense counsel with proper notice that it would be subpoenaing and/or offering those records into evidence. This Court recently addressed a similar argument in another permanent custody appeal. *See In re N.K.*, 9th Dist. Summit No. 29074, 2019-Ohio-371, ¶ 23. In that case, we emphasized that the parent did not demonstrate reversible error because she failed to demonstrate any prejudice resulting from any trial court error. *Id*. This Court reasoned that:

> [e]ven if Mother could establish that she was deprived of proper notice that CSB intended to introduce these exhibits, she must establish that the lack of notice hampered her counsel's ability to prepare a defense. Although Mother's counsel raised a timely objection to the introduction of this evidence, counsel did not request a continuance of the hearing or a recess to enable defense counsel to review the exhibits to prepare to defend against them. *See In re R.R.*, 9th Dist. Summit No. 27572, 2015-Ohio-5245, ¶ 21 (emphasizing that a continuance could have avoided any prejudice caused by a lack of notice about evidence to be considered by the trial court.).

*Id*.

{¶42} As in *In re N.K.*, during the permanent custody hearing in this case, Father failed to request a continuance of the hearing or a recess so his counsel had an opportunity to review the exhibits. Because Father has failed to demonstrate any prejudicial error in the admission of these exhibits or testimony about them, his fourth and fifth assignments of error are overruled.

### Father's Assignment of Error VI

**The trial court committed reversible and plain error when it allowed evidence, including exhibits, over Father's objection that were not admissible under the rules of evidence.**

{¶43} Father's sixth assignment of error is that the trial court erred in admitting certain testimony and numerous exhibits because they were not admissible under the rules of evidence. Many of the arguments that Father has raised under this assignment of error are redundant of arguments already overruled in Father's other assignments of error. Father also assets that the trial court erred in admitting certified copies of his prior convictions because they did not comply with Evid.R. 803(22). This Court has previously rejected the argument that certified court records of convictions must comply with Evid.R. 803(22) because they are self-authenticating under Evid.R. 902(4) and are admissible under Evid.R. 803(8), the public records exception to the hearsay rule. *See, e.g*., *In re R.P.*, 9th Dist. Summit No. 26836, 2013-Ohio-5728, ¶11.

{¶44} The remaining arguments under this assignment of error focus primarily on whether certain exhibits were properly authenticated as complete medical or counseling records. Father does not assert that the records were not authentic or that they reflected any false or nonrelevant information, but only that their admission did not technically comply with the rules of evidence. Again, even if Father can demonstrate any technical error in establishing that these records were authentic or complete, he has failed to argue or demonstrate that there was any resulting prejudice to his defense. Consequently, Father's sixth assignment of error is overruled.

### Father's Assignment of Error VII

**The trial court committed reversible and plain error when it modified a final order, by issuing a nunc pro tunc journal entry, when the case was on appeal and no one requested leave for a nunc pro tunc entry.**

{¶45} Father's seventh assignment of error is that the trial court erred in issuing a nunc pro tunc journal entry on March 16, 2018, because this case was pending on appeal. This Court has already recognized that the trial court lacked jurisdiction to enter nunc pro tunc entries on March 16, 2018 and on April 9, 2019. On September 11, 2018, through a journal entry filed in

the consolidated appeals from those orders, this Court vacated those orders as void and dismissed appeals Nos. 28991, 29007, and 29042. Father's seventh assignment of error is overruled as moot.

### Father's Assignment of Error VIII

**The trial court committed reversible and plain error by finding permanent custody [because] the cumulative errors above, even if harmless individually, taken together show that permanent custody is against the manifest weight of the evidence.**

{¶46} Father's final assignment of error is that, even if this Court finds that his individual assignments of error lack merit, we should find that the cumulative errors require reversal of the permanent custody judgment. As with Mother's "manifest weight" assignment of error, Father makes no argument about the evidence supporting the judgment. Instead, his only argument is that the cumulative errors stated through his other assignments of error constitute reversible error.

{¶47} In *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus, the Ohio Supreme Court recognized the doctrine of cumulative error. It held that although individual errors during trial may not rise to the level of reversible error, the combined prejudice resulting from those errors may rise to the level of reversible error. *Id.*; *see also State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 310; *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, ¶ 217. Because Father failed to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error. Father's eighth assignment of error is overruled.

### III.

{¶48} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
RICE, J.
CONCUR.

(Rice, J., of the Eleventh District Court of Appeals, sitting by assignment.)

APPEARANCES:

NEIL P. AGARWAL, Attorney at Law, for Appellant, Mother.

DENISE FERGUSON, Attorney at Law, for Appellant, Father.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

GINA D'AURELIO, Attorney at  Law, for Children.

JOSEPH M. KERNAN, Guardian ad Litem.