[Cite as *In re A.S.*, 2019-Ohio-2414.]

STATE OF OHIO       )            IN THE COURT OF APPEALS
                   )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: A.S.                        C.A. Nos.    29291
      E.U.                                   29308


                                    APPEAL FROM JUDGMENT
                                    ENTERED IN THE
                                    COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
                                    CASE Nos.    DN17-06-000421
                                                  DN17-06-000422


DECISION AND JOURNAL ENTRY

Dated: June 19, 2019

---

HENSAL, Judge.

**{¶1}** Appellants, N.U. ("Mother") and J.S. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of A.S., born August 2, 2014; and E.U., born June 13, 2016. On July 7, 2017, CSB filed complaints alleging that both children were neglected and dependent because their parents were failing to meet their basic needs. The children were dirty; there was little food in the home; and the younger child had been diagnosed with failure to thrive, but her parents were not appropriately feeding her or taking her to the doctor as needed. Both children had significant medical problems and developmental delays that

required frequent visits to medical appointments to monitor the conditions of the children and to update their caregiver with information about how to care for them.

{¶3} The complaint also alleged that both parents had substance abuse problems and that Mother also had serious mental health problems. At the time the case began, Mother was on community control for a 2016 conviction of felony possession of methamphetamines. She had violated the conditions of her community control by committing additional crimes and continuing to use drugs. Mother would later report to the caseworker that she had been diagnosed with bipolar disorder and ADHD but that she was not then taking any medications.

{¶4} The children were later adjudicated neglected and dependent and placed in the temporary custody of CSB. In addition to demonstrating that they had stable income and housing and that they could meet the children's basic and special needs, the case plan required both parents to obtain mental health and substance abuse evaluations and comply with any treatment recommendations. During the following year, however, neither parent complied with the reunification requirements of the case plan. They did not complete parenting classes or verify that they had stable income or housing. Although Mother and Father each completed substance abuse assessments, they did not follow through with the treatment or drug testing that was recommended. Neither parent obtained any mental health assessment or treatment and continued to threaten the foster mother, the caseworker, and others involved in this case.

{¶5} Consequently, CSB moved for permanent custody of both children. The trial court held a hearing on that motion as well as alternative requests for legal custody or a six-month extension of temporary custody. Following the hearing, the trial court terminated parental rights and placed A.S. and E.U. in the permanent custody of CSB. The parents separately

appealed and their appeals were later consolidated. Mother raises two assignments of error and Father raises one.

II.

MOTHER'S ASSIGNMENT OF ERROR I

> THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT ALLOWED EXPERT TESTIMONY OVER MOTHER'S OBJECTION.

**{¶6}** Mother's first assignment of error is that the trial court committed reversible error when it allowed CSB to present the testimony of a physician who treated one of the children because CSB had failed to provide defense counsel with proper notice that it would be calling the physician as an expert witness. This Court has addressed similar arguments in other permanent custody appeals. *See In re F.B.*, 9th Dist. Summit Nos. 28960, 28985, 2019-Ohio-1738, ¶ 41-42; *In re N.K.*, 9th Dist. Summit No. 29074, 2019-Ohio-371, ¶ 23. In both cases, this Court emphasized that the parent did not demonstrate reversible error because there was no demonstration of prejudice resulting from any trial court error. *Id*.

**{¶7}** Even if Mother failed to receive proper notice that this witness would testify as an expert, "she must establish that the lack of notice hampered her counsel's ability to prepare a defense." *Id*. When Mother's counsel objected to this witness testifying, the trial court allowed counsel an opportunity to voir dire the witness, but counsel declined to do so. Moreover, counsel did not request a continuance of the hearing or a recess to enable him to prepare to cross-examine this witness. *See In re R.R.*, 9th Dist. Summit No. 27572, 2015-Ohio-5245, ¶ 21 (emphasizing that a continuance could have avoided any prejudice caused by a lack of notice about evidence to be considered by the trial court); *In re F.B.* at ¶ 41-42; *In re N.K.* at ¶ 23.

Because Mother has failed to demonstrate any prejudicial error, her first assignment of error is overruled.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FINDING PERMANENT CUSTODY EVEN THOUGH IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IT WOULD HAVE BEEN MORE APPROPRIATE FOR A SIX[-]MONTH EXTENSION TO HAVE BEEN GRANTED.

### FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING FATHER A SIX-MONTH EXTENSION OF TEMPORARY CUSTODY.

{¶8}    This Court will address these assigned errors together because they are similar. The parents argue that, instead of placing the children in the permanent custody of CSB, the evidence instead supported the trial court granting them an extension of temporary custody. This Court reviews the evidence supporting a permanent custody decision to determine whether the judgment is against the manifest weight of the evidence. *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7.   To determine whether the permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered."   (Internal citations omitted.) *Id*.

{¶9}    Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the

child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶10} The trial court found that CSB satisfied the first prong of the permanent custody test for alternative reasons under Revised Code Section 2151.414(E), including that the parents had failed to substantially remedy the conditions that caused A.S. and E.U. to be placed outside the home. *See* R.C. 2151.414(E)(1). The parents do not challenge that finding, which is fully supported by the record.

{¶11} Instead, both parents challenge the trial court's finding that permanent custody was in the best interest of their children. They contend that an extension of temporary custody, rather than permanent custody, was in their children's best interest. To begin with, in addition to considering which disposition would be in the children's best interest, the trial court would have had authority to extend temporary custody only if it also found that the parents had made "significant progress" on the goals of the case plan and that there was reasonable cause to believe that the children would be reunified with them or otherwise permanently placed during the extension period. *In re J.G.*, 9th Dist. Summit No. 29106, 2018-Ohio-5222, ¶ 8, quoting R.C. 2151.415(D)(1).

{¶12} The parents have not challenged the trial court's finding that they failed to substantially remedy the conditions that caused the children to remain placed outside their home. In other words, they do not dispute the trial court's implicit finding that they failed to make

significant progress on the reunification goals of the case plan. The evidence was not disputed that the parents did not work with the caseworker or service providers on the reunification goals of the case plan.

{¶13} Notably, both parents refused to address their mental health and substance abuse problems and continued to demonstrate erratic and threatening behavior to the caseworker and foster mother. Mother also continued to violate the conditions of her community control that were imposed after her conviction of felony drug possession. Her probation officer testified that Mother had violated community control repeatedly by committing additional crimes, not reporting as required, and refusing to submit to required drug screening. He further testified that he believed that Mother needed residential drug treatment.

{¶14} Moreover, the trial court had clear and convincing evidence before it to demonstrate that permanent custody was in the best interest of the children. When determining the children's best interest under Revised Code Section 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, their custodial history, and the need for permanence in their lives.[1] R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶15} Because the parents failed to comply with the case plan, their interaction with their children was always limited to supervised visitation and attendance at the children's medical appointments. The parents attended approximately two-thirds of their scheduled visits. They came to some of the children's medical appointments but were not cooperative with the medical providers and failed to understand the severity of the children's medical issues. After

---

[1] Although the trial court is also required to consider any relevant factors set forth in Section 2151.414(E)(7) to (11), none of those factors apply to this case.

one of the children had surgery, hospital security had to remove them from the child's hospital room because someone removed the child's I.V. and both parents were yelling and screaming. Both parents had frequently become upset with the foster mother and Mother often became angry at the guardian ad litem over trivial matters and threatened and screamed at them in front of the children. The foster mother and the guardian testified that some of those altercations had frightened them.

{¶16} These medically fragile children had been placed in the same foster home since the beginning of this case. The foster parents were assuring that all their medical and basic needs were being met. The children's health had improved, and witnesses explained that they appeared to feel safe and secure in that home.

{¶17} Because the children were only one and three years old at the time of the hearing, the guardian ad litem spoke on their behalf. She opined that permanent custody was in their best interest because neither parent had complied with the reunification goals of the case plan; they lacked insight into their family's problems and were uncooperative with everyone involved in the case and the children's medical providers; and Mother's untreated mental health problems remained a significant obstacle to her ability to appropriately parent her children.

{¶18} The children needed a legally secure permanent placement. The parents were not prepared to meet their daily needs and provide them with a suitable home and CSB had been unable to find any relative who was willing and able to do so. Therefore, the trial court concluded that a legally secure permanent placement would be achieved by placing the children in the permanent custody of CSB.

**{¶19}** The parents have failed to demonstrate that the trial court lost its way by concluding that permanent custody was in the best interest of both children. Mother's second assignment of error and Father's only assignment of error are overruled.

### III.

**{¶20}** The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

BRENDON J. KOHRS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.