[Cite as *In re J.J.*, 2019-Ohio-2152.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

IN RE: J.J.

C.A. No.    19CA0008-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2017 09 NE 00070

DECISION AND JOURNAL ENTRY

Dated: June 3, 2019

TEODOSIO, Presiding Judge.

{¶1}    Appellant, K.H.-M. ("Mother"), appeals from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Medina County Job and Family Services ("MCJFS"). This Court affirms.

I.

{¶2}    Mother is the biological mother of J.J., born July 6, 2017. The child's father did not appeal from the trial court's judgment. Mother has an older child, G.M., who was removed from Mother's custody because of Mother's substance abuse problems. G.M. was ultimately placed in the legal custody of his foster parents and is not a party to this appeal.

{¶3}    MCJFS still had an open case with G.M. when J.J. was born. Mother had been working on substance abuse treatment through the case plan in G.M.'s case. She began working with the agency on a voluntary basis regarding J.J. shortly after the child was born because J.J.'s

father overdosed on heroin in the family home. Pursuant to the voluntary case plan, J.J. was placed in the same foster home as G.M. On September 9, 2017, MCJFS filed a complaint to begin this involuntary case, alleging that J.J. was a neglected and dependent child because both parents had ongoing substance abuse problems, lacked the ability to appropriately care for the infant child, and the agency had been unable to find a suitable relative who was willing and able to care for J.J.

{¶4}   J.J. was later adjudicated a dependent child and placed in the temporary custody of MCJFS. The case plan goals in this case again focused primarily on Mother addressing her long-standing substance abuse problem. Mother did not consistently engage in treatment, however, nor did she demonstrate sobriety for any significant period. By April 2018, Mother had dropped out of drug treatment and would later admit that she was using heroin and/or fentanyl and other illegal drugs every day. Mother later told the caseworker that she moved from Medina to Barberton, but she did not share her address with the caseworker or guardian ad litem. Mother eventually stopped communicating with the caseworker, missed scheduled visitations and court hearings, and was no longer working on the reunification goals of the case plan.

{¶5}   Consequently, MCJFS moved for permanent custody of J.J. Following a two-day hearing, which Mother did not attend but was represented by counsel, the trial court terminated Mother's parental rights and placed J.J. in the permanent custody of MCJFS. Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT
DENIED COUNSEL'S REQUEST FOR A CONTINUANCE WHEN
APPELLANT MOTHER COULD NOT APPEAR AT THE HEARING DUE TO
HER INABILITY TO OBTAIN TRANSPORTATION.

{¶6}    Mother's first assignment of error is that the trial court committed reversible error by denying her counsel's request to continue the permanent custody hearing.  Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Moreover, requests for continuance are required to be made in writing and "shall be made as far in advance of hearing dates as practicable[.]"  Loc.R. 7.2 of the Court of Common Pleas of Medina County, Juvenile Division.  The local rule further provides that "[n]o case will be continued on the day of hearing except for good cause shown." *Id*.

{¶7}    Moreover, the decision to grant or deny a continuance lies within the sound discretion of the trial judge, and requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice."  *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).  A trial court's determination of whether to continue a hearing should consider factors such as the length of the continuance sought; whether the hearing has already been continued; and the inconvenience to other parties and/or counsel, witnesses, and the trial court.  *Id*. at 67-68.

{¶8}    Mother filed no advance written motion for a continuance.  Instead, at 9:30 a.m. on the morning of the hearing that was scheduled to begin at 9:00 a.m., Mother's trial counsel orally requested a continuance of the hearing.  He told the trial judge that Mother had contacted him via text message at 9:14 a.m. to inform him that she did not have a ride because her friend's vehicle had a flat tire, but that she would try to find a ride to get her there later in the day.  After the lunch recess, trial counsel renewed his oral motion, explaining that Mother had again contacted him and informed him that she could not find a ride.  The second day of the hearing, trial counsel informed the court that Mother had sent him a text message the previous evening

that she could not attend because she did not have a ride. Trial counsel further explained that he had sent Mother text messages that morning, but she had not responded.

{¶9} Although there had been no prior continuances of this hearing, the trial court focused on the inconvenience to the court and parties. The trial court denied counsel's last-minute oral request for a continuance, explaining that the hearing had been scheduled two months earlier and that all other parties and witnesses were prepared to proceed with the hearing.

{¶10} Notably, the court had no information about the length of continuance sought. Mother's counsel did not propose a date when Mother would be able to appear, nor could he assure that Mother would appear if the court continued the hearing to a later date. During the months prior to the hearing, Mother had failed to maintain any contact with the caseworker or the guardian ad litem. Mother had missed several other hearings in this case, including the two that were held before the permanent custody hearing. Mother's last appearance in court in this case was five months before MCJFS moved for permanent custody.

{¶11} Mother has failed to demonstrate that she had good cause for requesting a continuance of both days of the permanent custody hearing or that the trial court abused its discretion by denying her a continuance. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY TERMINATING MOTHER'S PARENTAL RIGHTS AND GRANTING PERMANENT CUSTODY OF THE CHILD TO [MCJFS].

{¶12} Mother's second assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing. Although she states both an abuse of discretion and manifest weight standard of review, the appropriate standard of review to address the argument that she has raised is whether the judgment is against the manifest weight

of the evidence. *In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 7. To determine whether the permanent custody judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations omitted.) *Id.*

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶14} The trial court found that MCJFS established the first prong of the permanent custody test for several alternative reasons, including that Mother had failed to substantially remedy the conditions that caused J.J. to be placed outside the home. *See* R.C. 2151.414(E)(1). Mother does not challenge that finding, which is fully supported by the record.

{¶15} Instead, Mother challenges the trial court's finding that permanent custody was in the best interest of her child. When determining the child's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and

interrelationships of the child, the child's wishes, the custodial history of the child, the need for permanence in the child's life, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶16} Mother's interaction with J.J. during this case was limited to supervised visitation because she did not adequately address her substance abuse problem. The caseworker described Mother's compliance with the case plan as "minimal." Inpatient treatment was recommended for Mother, but she refused to participate in a residential treatment program. Instead, Mother began outpatient treatment programs twice during this case, but she was terminated both times because she failed to regularly attend.

{¶17} Moreover, Mother never demonstrated a prolonged period of sobriety. She continued to test positive for drugs and, as the case progressed, she had moved from using mostly marijuana and some cocaine to regularly using more serious drugs such as heroin and fentanyl. Mother eventually stopped coming to visits and court hearings, and she stopped communicating with the caseworker. Of the 160 visits that were offered to Mother, she attended only 89 or 90. By the time of the hearing, J.J. was 16 months old and Mother had not developed a strong bond with him. In the foster home, on the other hand, J.J. had become closely bonded to the family and his older sibling.

{¶18} Because J.J. was too young to express his wishes, the guardian ad litem spoke on his behalf. He recommended that J.J. be placed in the permanent custody of MCJFS. Like other witnesses, he expressed serious concern that Mother's drug problem had only gotten worse during this case because she had moved on to daily use of much more serious drugs.

{¶19} J.J.'s custodial history included spending most of his life living in a temporary placement. He needed a legally secure permanent placement but neither parent was prepared to provide him with a stable home and MCJFS had been unable to find a relative who was willing and able to do so. Consequently, the trial court concluded that a stable placement would be achieved by granting permanent custody to MCJFS.

{¶20} Mother has failed to demonstrate that the trial court lost its way by finding that permanent custody was in the best interest of J.J. Mother's second assignment of error is overruled.

### III.

{¶21} Mother's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

ERIC D. HALL, Attorney at Law, for Appellant.

AMANDA CASALINUOVO, Attorney at Law, for Appellee.

JAMES ARMSTRONG, Guardian ad Litem.