[Cite as *In re J.J.*, 2020-Ohio-2808.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.J.

C.A. No.      29534

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      DN 17 11 0901

DECISION AND JOURNAL ENTRY

Dated: May 6, 2020

HENSAL, Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of the child J.J. to a third-party relative. This Court affirms.

I.

{¶2} Mother is the biological mother of J.J. (d.o.b. 10/19/17). Father's paternity of the child was established by affidavit at the child's birth. Although not married, Mother and Father were living together when the child was born.

{¶3} The initial concern for the child's well-being arose when J.J. lost 14% of his birth weight within his first week of life. Summit County Children Services Board ("CSB" or "the agency") learned that the parents had been rationing the baby's formula due to their limited financial resources. After further investigation, the agency learned of Mother's significant child welfare history regarding four other children, current substance abuse issues, and outstanding

warrant for arrest. In addition, there were recent allegations of domestic violence between Mother and Father. Moreover, Father was not taking any measures to protect the child and was not receptive to interventions to ensure J.J.'s well-being. Accordingly, CSB filed a complaint alleging that the three-week old J.J. was a neglected and dependent child. The agency removed the child from the parents' home and obtained an emergency order of temporary custody.

{¶4} J.J. was later adjudicated a neglected and dependent child and placed in the temporary custody of CSB. The agency placed J.J. with his paternal adult half-sister ("Sister"), where he remained throughout the case. The juvenile court adopted the agency's case plan as the order of the court. Mother ceased appearing for hearings, participating in services, or otherwise participating in the proceedings in the juvenile court. She has not appealed.

{¶5} As the case progressed, Father was successfully participating in case plan services and demonstrating the ability to provide a safe and stable home for J.J. Accordingly, CSB sought to reunify the child with Father. Almost a year after the child's removal from the home, however, Father was shot in the leg. Based on the serious physical injury to Father's leg, CSB moved for a first six-month extension of its temporary custody to allow Father time to engage in therapy and heal. Father joined in that motion. He also requested that his visits be supervised because his injury prevented him from caring for the child alone. Citing Father's significant progress on his case plan objectives, the juvenile court granted a first extension of temporary custody.

{¶6} Father quickly began to suffer major setbacks regarding his compliance with case plan objectives. He was evicted from his home and would not identify his current residence. He became unemployed. He ceased communicating with the guardian ad litem. Because of Father's threats to the paternal grandmother who had been supervising visits, visitation was moved to the Family Interaction Center.

**{¶7}** As Father ceased demonstrating that he was able to provide a safe and stable home for the child, CSB filed a motion for legal custody to Sister. Father moved for legal custody, or in the alternative, a second six-month of extension of temporary custody. The magistrate conducted a two-day final dispositional hearing. Father did not appear for the second day of hearing, and his attorney requested a continuance. The magistrate denied that request and subsequently issued a decision recommending an award of legal custody to Sister. Father filed timely objections, challenging the denial of his requested continuance and the adequacy of the evidence underlying the magistrate's finding that legal custody to Sister was in the child's best interest. Although he asserted that he would supplement his objections after the transcripts were filed, Father failed to do so.

**{¶8}** The juvenile court overruled Father's objections. It entered judgment granting CSB's motion for legal custody to Sister. Father filed a timely appeal in which he raises two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FINDING IT WAS IN THE BEST INTERESTS OF THE CHILD J.J. TO BE PLACED IN THE LEGAL CUSTODY OF [SISTER] EVEN THOUGH IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶9}** Father argues that the juvenile court's award of legal custody to Sister was against the manifest weight of the evidence. This Court disagrees.

**{¶10}** To the extent that Father challenges the admission of evidence that he claims was hearsay, Father failed to preserve that issue for appeal. Juvenile Rule 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R.

40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

Therefore, "[w]hen a party fails to raise an issue in the party's objections to the magistrate's decision, it may not be raised for the first time on appeal." *Varner v. Varner*, 170 Ohio App.3d 448, 2007-Ohio-675, ¶ 22 (9th Dist.).

{¶11} Father failed to challenge the admissibility of any evidence in his objections. Accordingly, he has forfeited the issue on appeal, except for a claim of plain error. *See* Juv.R. 40(D)(3)(b)(iv). To establish plain error, an appellant "must demonstrate not only trial court error but also that the error resulted in prejudice to his defense." *In re F.B.*, 9th Dist. Summit Nos. 28690 and 28985, 2019-Ohio-1738, ¶ 30.

{¶12} It is unclear from Father's appellate brief which precise statements he believes were hearsay, because he only references "the grandmother's statements[.]" Moreover, he fails to argue how any statements alluding to the lack of a biological relationship between Father and the child prejudiced him. In fact, he admits that the juvenile court at all times considered Father to be the child's legal father based on Father's properly executed affidavit of paternity. To the extent that he argues that evidence of his reaction to the grandmother's comments about paternity was inadmissible, he fails to explain how such evidence constituted hearsay. Moreover, the record demonstrates that Sister testified that she was present and witnessed Father's reaction, including threats to the grandmother. Under these circumstances, Father has failed to demonstrate how he was prejudiced or that the juvenile court committed plain error.

Manifest weight

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial

court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶14} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Revised Code

Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶15} Father fails to cite the best interest factors or make any argument in regard to them. A review of the record, however, demonstrates that the juvenile court's award of legal custody to Sister was in the child's best interest.

{¶16} J.J. was removed from the parents' home shortly after his birth due to his precipitous loss of weight. He was placed with Sister with whom he resided throughout the duration of the case. Sister has consistently provided a safe and secure home in which the child has thrived. Although Father had begun making significant progress on his case plan objectives, all progress ceased after Father was shot in the leg. He requested supervised visitation because he was unable to care for the child without assistance. His need for assistance continued the entire ten months after he was shot.

{¶17} Father was evicted from his home and never secured safe and stable housing thereafter. In fact, he refused to give the caseworker and guardian ad litem details regarding his living arrangements. He lied about moving in with his mother who was approved to supervise visits. He became angry and aggressive towards the child's caregiver.

{¶18} Father also became unemployed due to his injury. The caseworker testified that Father admitted that he was struggling financially to meet his own needs, let alone those of a child. Most significantly, Father indicated that he would likely require a second surgery to correct deficiencies from the first surgery which impacted his healing. Another surgery would reasonably further delay Father's ability to work to provide for his own basic needs and the basic needs of the child.

{¶19} J.J. was too young to express his own wishes. The guardian ad litem reported that it was in the one-and-a-half-year-old child's best interest to be placed in the legal custody of Sister. Based on the above-referenced circumstances, this is not the exceptional case where the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding that an award of legal custody to Sister was in the best interest of the child. Accordingly, the juvenile court's judgment was not against the manifest weight of the evidence.

{¶20} Father concludes his argument by asserting that the juvenile court should have granted a second six-month extension of temporary custody to allow him additional time to complete his case plan objectives. Extensions of temporary custody are governed by Revised Code Section 2151.415(D), which provides in relevant part:

> The court may extend the temporary custody order of the child for an additional period of up to six months if it determines at the hearing, by clear and convincing evidence, that the additional extension is in the best interest of the child, there has been substantial additional progress since the original extension of temporary custody in the case plan of the child, there has been substantial additional progress since the original extension of temporary custody toward reunifying the child with one of the parents or otherwise permanently placing the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise placed in a permanent setting before the expiration of the additional extension period.

R.C. 2151.415(D)(2).

{¶21} As noted above, there was no evidence of significant progress by Father on his case plan objectives since the initial extension of temporary custody. He no longer had a home or the financial resources to care for himself, let alone a child. While it appears that Father's injury after being shot led to his inability to care for the child, he remained ten months later in no position to care for the child within the foreseeable future. In fact, he asserted that he would need another surgery which would further delay his ability to work and otherwise care for J.J. Accordingly, the

juvenile court's judgment denying Father's motion for a second six-month extension of temporary custody was not against the manifest weight of the evidence.

{¶22} Father's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN NOT GRANTING A CONTINUANCE WHEN REQUESTED BY FATHER'S COUNSEL BECAUSE FATHER MAY HAVE BEEN IN THE HOSPITAL HAVING SURGERY.

{¶23} Father argues that the juvenile court erred by failing to grant a continuance of the second day of the legal custody hearing when he failed to appear. This Court disagrees.

{¶24} "[T]he decision to grant or deny a continuance rests within the sound discretion of the trial court, and requires a balancing of 'any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *In re J.J.*, 9th Dist. Medina No. 19CA0008-M, 2019-Ohio-2152, ¶ 7, quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). When determining whether to continue a hearing, the trial court should consider various factors including the length of the continuance sought; whether there has been a prior continuance of the hearing; and the inconvenience to other parties, attorneys, witnesses, and the trial court. *In re L.B.*, 9th Dist. Summit Nos. 28483 and 28494, 2017-Ohio-7049, ¶ 11, citing *Unger* at 65, 67-68. In addition, Juvenile Rule 23 only allows for the granting of continuances "when imperative to secure fair treatment for the parties."

{¶25} Father's attorney filed a motion to continue the first day of the legal custody hearing because he (the attorney) was scheduled for an appearance in another court. The juvenile court denied the motion. Father's attorney thereafter arranged for stand-in counsel to represent Father during the first day of hearing. Father was also present for hearing on that day. At the conclusion of testimony on the first day of the hearing, the juvenile court conferred with counsel and the

parties to schedule a second day to conclude the hearing. Father did not object to the date and time chosen by the trial court. The record further demonstrates that the juvenile court called Father's appointed counsel to ensure that he was available for the second date and time.

{¶26} On the second day of the hearing, Father failed to appear. During a preliminary discussion before the presentation of evidence, counsel reported that Father had left him a voicemail message that he would be having a second surgery on his leg, although counsel was not sure of the exact date of that surgery. Counsel expressly stated that he was not sure why Father was not at the hearing. Father's attorney did not request a continuance of the hearing at that time, and CSB presented the remainder of its case-in-chief.

{¶27} After the agency rested, Father's counsel orally moved for a continuance of the hearing to allow Father the opportunity to be present. Both the assistant prosecutor and the guardian ad litem objected to a continuance in the interest of securing timely permanence for the child. Moreover, both reported that Father did not mention anything about having scheduled a surgery when he attended a visitation at the agency during the prior week. Both also reminded the juvenile court that Father was present when the juvenile court selected the second date and time for the hearing without objection.

{¶28} Father now argues that a continuance was warranted because he *may* have been having surgery on the date of the second day of the hearing. Given Father's failure to clarify for his attorney when he was scheduled for surgery, coupled with the fact that he had not mentioned surgery to the caseworker or guardian ad litem at a recent visitation, there exists nothing more than mere speculation that Father missed the hearing due to surgery. In addition, Father was present at the first day of hearing, had the opportunity to provide input as to the second hearing date, and did not object when the juvenile court scheduled a second hearing date for 22 days after the first.

{¶29} The legal custody hearing had already been continued for a second day of hearing. Father's attorney provided no information regarding the length of time the matter would need to be continued to give Father the opportunity to appear. In fact, counsel was uncertain as to whether or not Father had really had surgery that day. All other parties and attorneys were present and prepared to conclude the hearing on the second scheduled date. The child's custody had already been in limbo for 18 months.

{¶30} Under these circumstances, the juvenile court did not abuse its discretion by denying Father's motion to continue the second day of the custody hearing. A continuance was not imperative to secure Father's fair treatment. *See* Juv.R. 23. Father was present at the first day of hearing. He was represented by counsel on both days of hearing. The exact reason for his absence at the second day was unknown, even to his own counsel. Moreover, there was no indication of how long the juvenile court would need to continue the matter to accommodate Father. Father's second assignment of error is overruled.

## III.

{¶31} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.